UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07CV-616-H

JESS HENSLEY                                                                    PLAINTIFF

V.

LT. CHRISTOPHER KAMPSHAEFER, et al.                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This is a *pro se* civil rights action filed by Plaintiff, Jess Hensley ("Hensley"), an inmate

at the Kentucky State Reformatory in LaGrange, Kentucky.  Following initial screening of the

complaint pursuant to 28 U.S.C. § 1915A, the Court entered a Memorandum Opinion on

February 7, 2007 dismissing various claims, but allowing the action to proceed on Plaintiff's

individual capacity claims against Defendants, Christopher Kampshaefer and Crystal Heitzman,

alleging violations of Plaintiff's First Amendment rights of freedom of religion, freedom of

speech, and freedom from retaliation by conducting searches of his cell.  The Court also allowed

the Plaintiff's official capacity claims for injunctive relief to proceed against Defendants

Kampshaefer and Heitzman.

Defendants have now moved for summary judgment on all claims.  The Court has

reviewed the record and the arguments.  For the reasons stated below, the Court agrees with

Defendants that the claims should be dismissed.

I.

Hensley is an inmate who was convicted of wanton murder in 1993 and sentenced to fifty

years of imprisonment.  He is and has been housed at the Kentucky State Reformatory ("KSR")
during all times relevant to this action.

In April of 2006, KSR adopted new policies and procedures banning possession of
tobacco products at the prison.  On March 30, 2007, Hensley filed Civil Action No. 07-CI-00226
in Oldham Circuit Court challenging the smoking ban at KSR.  The state court found the action
to be without merit, and entered an order on June 8, 2007 granting Kentucky Department of
Corrections' ("KDOC") motion to dismiss the action.

In his initial, handwritten complaint and in his cover letter to the initial complaint,
Hensley alleged that he noticed a pattern of cell searches after he filed his state court action
challenging the smoking ban at KSR.  He contended that the "numerous and repeated cell
searches" were a "clear demonstration of retaliation."  He appears to allege that the cell searches
were in retaliation for his prior legal activities in filing a lawsuit challenging the KDOC's
adoption of a tobacco ban at KSR.  The only cell specific searches that Hensley alleges that
Kampshaefer or Heitzman were involved in are a July 9, 2007 cell search performed by
Kampshaefer and a July 18, 2007 search performed by Heitzman.

Hensley alleges that during the July 9, 2007, and July 18, 2007 searches, "Petitioners'
cell was 'turned up-side down' and all of his religious artifacts were disrespected by being
'tossed' around and on the bunk and cell floor."  He also alleges that Kampshaefer told him to
"shut up" during the July 9, 2007 search and by Heitzman during the July 18, 2007 search.
During these two searches, Kampshaefer and Heitzman "desecrated" and "disrespected" his
"Native American Ceremonial Religious properties" and damaged his family pictures and legal
documents by tossing them on the floor and bunk during the searches.  The complaint alleged

2

only that Defendants "desecrated Petitioner's religious artifacts, family pictures, and legal documents, by intentionally tossing them on the floor and bunk."

Hensley made no allegations that either of Defendants removed items from the cell that he needed to practice his religion, or that Defendants otherwise prevented him from practicing his religion.  Instead, Hensley alleges that the searches prevented him from exercising his Native American religion.

Defendants deny mistreating Hensley's property and state that they simply moved items onto his bed in order to carry out the cell searches.  Defendants deny damaging or destroying any of Hensley's property, or placing it on the floor.  Defendants also state that they had no knowledge of Hensley's legal activities at the time of the July 2007 cell searches.

Hensley filed Grievance No. 07-720 in accordance with KDOC regulations.  That Grievance does not state that Defendants' conduct violated Hensley's right to free speech or his right to freedom from retaliation.  Grievance No. 07-720 also states nothing about cell searches besides the July 9, 2007, search conducted by Defendant Kampshaefer and the July 18, 2007 search conducted by Defendant Heitzman.  Grievance No. 07-720 does state that Hensley "believe[d] these two incidents show a pattern of disrespecting religion that should not be tolerated at KSR," and requests that "regulations [be] followed so that [Inmate Hensley] can be assured that [his] religious properties will not be desecrated again."

## II.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c).  Normally, the moving party bears the initial burden of "informing the District Court of the basis of its motion" and "identifying the matter it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party is then required to present evidence of "specific facts showing that there is a genuine issue for a trial." *Celotex Corp.*, 477 U.S. at 324.  Summary judgment is appropriate if the non-moving party fails to make a satisfactory showing on any essential element of its case for which it bears the burden of proof.

Qualified immunity is a privilege that is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194 (2001), *quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  As a result, when the defense of qualified immunity properly is raised, it is the plaintiff who bears the burden of establishing that his rights were violated and that the defendants are not entitled to qualified immunity.  *Ciminillo v. Stretcher*, 434 F.3d 461, 466 (6th Cir. 2005).

### III.

Under 42 U.S.C. § 1997e(a), prisoners who wish to challenge prison conditions pursuant to federal law are required to exhaust all available administrative remedies before filing suit in federal court.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The Supreme Court has recently clarified that a prisoner need not demonstrate exhaustion on the face of his complaint.  *Jones v. Bock*, 127 S.Ct. 910, 921 (2007).  However, where the complaint establishes that the claim is barred by an affirmative defense, such as the statute of limitations, the complaint may be dismissed for failure to state a claim upon initial screening.  *Id.* at 921-22.

4

In his complaint, Hensley acknowledges that his only attempt at exhausting his available administrative remedies was his filing of Grievance No. 07-720, a copy of which was attached to the complaint. That Grievance does not allege that Defendants' alleged conduct violated Hensley's right to free speech or right to freedom from retaliation for having exercised his right to access to the courts. It contains no explicit allegation that Defendants' alleged conduct violated his right to free exercise of religion. The Grievance does state that Hensley "believe[d] these two incidents show a pattern of disrespecting religion that should not be tolerated at KSR," and requests that "regulations [be] followed so that [Hensley] can be assured that [his] religious properties will not be desecrated again."

Consequently, the Court concludes that Hensley has thus failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a) as to all claims except those concerning a violation of his freedom of religion. All other claims must be dismissed due to the failure to exhaust administrative remedies.

IV.

The Court now considers Hensley's freedom of religion claim.

The constitutional rights possessed by inmates are "more limited in scope than the constitutional rights held by the individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Prison inmates retain only those First Amendment rights that are not inconsistent with the inmate's status as prisoner or with legitimate penological objectives of the correction's system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). *See also Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979). *Cruz v. Beto*, 405 U.S. 319, 321 (1972). Even where claims are made under the First Amendment, the United States Supreme Court would not substitute its judgment on

5

difficult and sensitive matters of institutional administration for determinations of those charged with the formidable task of running prisons. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).  Even those actions which directly or indirectly inhibit an inmate's ability to practice his or her religion are nonetheless permissible if reasonably related to legitimate penological interests.  That is certainly the case here.

The First Amendment does require that inmates be afforded reasonable opportunities for the free exercise of religion.  The complaint and amended complaint fail to allege that Defendants' conduct prevented him from practicing his religion.  Instead, they contain only general allegations that unspecified items of personal property were "disrespected" or "dishonored."  Hensley fails to offer proof that any of the items or property involved in the searches were essential to the practice of his religion.  Most important, Hensley fails to offer proof that Defendant's alleged conduct prevented him from practicing his religion.

The complaint does not allege any claim under the Federal Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc-1 ("RLUIPA").  Regardless, Hensley has failed to cite any actual evidence sufficient to support a cause of action under that statute.  RLUIPA prohibits state and federal governments from placing any substantial burden on religious exercise by a person residing in, or confined to, an institution, except to further a compelling governmental interest. *Cutter v. Wilkinson*, 125 S.Ct. 2113 (2005), (citing 24 U.S.C. §2000cc-1).  To amount to a "substantial burden" under the RLUIPA, the prisoner must allege and prove that the defendants' actions forced the prisoner into action contrary to his essential religious beliefs.

The Court finds no basis in the record for suggesting that Defendants' conduct placed a

substantial burden on the exercise of Hensley's religion.  He does not allege that Defendants'

actions ever forced him to act in a manner contrary to his essential religious beliefs, or prevented

him from continuing to follow his religion.  Hensley has failed to come forward with any

probative evidence establishing that any of the alleged actions of Kampshaefer or Heitzman

during the July 2007 cell searches deprived him of any items or property essential to the practice

of his religion.

Thus, Hensley cannot establish that Defendants' actions in periodically searching his cell

violated his constitutional rights to practice his religion.


V.

Hensley contends that Kampshaefer and Heitzman violated his First Amendment right to

free speech by telling Hensley to "shut up" after he had complained about the manner in which

Defendants were allegedly touching and handling his family pictures, letters, which are religious

artifacts.

Even if this is true and even if Hensley had exhausted his administrative remedies, the

alleged conduct would not amount to a violation of Hensley's First Amendment right to freedom

of speech.  "Lawful incarceration brings about the necessary withdrawal or limitation of many

privileges and rights, a refraction justified by the considerations underlying our penal system."

*Price v. Johnston*, 334 U.S. 266, 285 (1948).  Prison inmates retain only those First Amendment

rights that are not inconsistent with his status as prisoner or with legitimate penological

objectives of correction's system.  Unlimited free speech for inmates during cell searches would

clearly be inconsistent with both the inmates' status as prisoners and with legitimate penological

interests.  Cell searches are a critical part of prison security.  It would be difficult, if not impossible, for corrections officers to conduct cell searches in an orderly fashion if they were not able to tell inmates to "shut up" during the cell searches.

Furthermore, even if the alleged conduct could somehow be construed as a constitutional violation, Defendants would be entitled to qualified immunity due to the lack of any binding legal precedent that would have clearly alerted Defendants that telling a vocal prisoner to "shut up" during a cell search violated the plaintiff's right. *Anderson v. Creighton*, 483 U.S. at 640; *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

VI.

A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.  *Thaddeus-X v. Blatter*, 175 F.2d 378, 394 (6th Cir. 1999) (*en banc*).

Hensley did not make an administrative claim as to these allegations.  However, he did file a lawsuit.  Regardless, one cannot say that Hensley has made a good faith claim regarding the tobacco ban.  Moreover, the mere searching of an inmate's cell could not be considered an adverse action without much more evidence than is offered here.  Prison officials cannot be barred from taking regular security precautions simply because an inmate has made a protected claim.

For all these reasons and others set forth in Defendants' response, the Court concludes

8

that all of the claims in the complaint, including those for injunctive relief, should be dismissed.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is

SUSTAINED and Plaintiff's complaint is DISMISSED WITH PREJUDICE.

This is a final order.

cc:    Jess Hensley, *Pro Se*
       Counsel of Record